GEORGE W. PATTERSON, JR., *v.* JONATHAN BROWN and HORACE
G. PHELPS, Rec'r, &c., impl'd with HARRIET A. LOMBARD.

.A court of equity will not relieve a party from the consequences of a risk
which he voluntarily assumes.

Thus, where a party, having notice of the pendency of a suit to reach the equi-
table interest of a judgment debtor in lands, purchases such lands, and enters
upon and improves the same, he cannot come into equity for relief, to have
his improvements discharged from the lien of the decree rendered against
the land.

Nor can said lien be discharged by the payment of a sum of money equal to
the value of the lands without such improvements.

APPEAL from judgment of Supreme Court. Action to
exempt improvements from the operation of the lien of a
judgment upon lands.

The cause. was tried before Mr. Justice JOHNSON at a
Special Term of the Supreme Court, held in the county of
Steuben, in July, 1861. The facts as found by the judge,
and appear by the pleadings, were substantially these:

On the 7th December, 1857, one James L. Brown recov-
ered a judgment in the Supreme Court, against Salmon B.
Rowley, for the sum of $529.06, which judgment was after-
ward duly assigned to the defendant, Jonathan Brown.
Pursuant to, and in proceedings supplementary to the execu-
tion issued on that judgment, the defendant, Horace G.
Phelps, was, before the 23d June, 1858, duly appointed
receiver of all the property, equitable interests, and things in
action of Salmon B. Rowley, and duly filed his bond as such
receiver on 23d June, 1858. On the 11th September, 1858,
Phelps, as such receiver, commenced an action in the Su-
preme Court against Salmon B. Rowley, Harriet A. Lombard,
Charles Lombard and Galen Otis, alleging in his complaint
the recovery of the judgment by Brown, the proceedings
supplementary to execution and his appointment as receiver;
that before and at the time of his appointment as receiver,
Salmon B. Rowley was the equitable owner and in possession
of certain premises in the village of Corning (describing

them), subject to the equitable lien and charge of a certain mortgage, then held by Galen Otis for the sum of $1,000; that William M. Mallory held the legal title to the premises; that the interest of Rowley therein was a contract interest, and that the purchase-money thereof had been all paid; that on 11th June, 1858, Rowley, with intent to cheat and defraud his creditors and prevent the collection of the Brown judgment out of said premises, and upon some secret trust between him and Harriet A. Lombard, procured Mallory to convey the premises by deed to Galen Otis, upon the understanding and agreement that Otis should convey the premises by deed to the said Harriet A. Lombard, who should thereupon execute and deliver to Otis, her mortgage on the premises to secure the payment to Otis of the amount of his mortgage, together with her bond and that of her husband, Charles Lombard; that the said conveyances, and the said bond and mortgage were delivered on or about the 14th June, 1858; that up to the time of the execution of said conveyances, Rowley was in actual possession, and in the enjoyment of the rents and profits of the premises; that they were actually worth over and above the amount of the mortgage $1,200, and that Rowley's interest was of that value; and the complaint prayed that it be declared that the said Harriet A. Lombard held the title to the said premises as the trustee, and for the benefit of Rowley, subject to the payment of the mortgage held by Otis, and that the rest and residue of the property, after satisfying the mortgage, may be applied to the payment of Brown's judgment, and that the premises might be sold under the direction of the court, and the avails of such applied to the payment of Otis' mortgage, the Brown judgment, and the plaintiff's costs and commissions.

At the commencement of this action the plaintiff caused the proper notice of the object of it to be filed in the office of the clerk of the county of Steuben, where such action was triable; but, owing to the mistake of the clerk, the notice was not placed in such office where such notices were usually and properly kept, and was not indexed in the book

kept by the clerk for that purpose. Issue was joined in the action before the 1st day of April, 1859; and, in May, 1860, the action was tried at a Special Term of the Supreme Court held in the county of Steuben, and the judgment and decree of the court made and perfected therein. It was adjudged and decreed that the transfer of the premises in the complaint mentioned from Salmon B. Rowley to Harriet A. Lombard was fraudulent and void as against the judgment creditor in the complaint mentioned; that Harriet A. Lombard and her assigns hold the said premises in trust for the benefit of the plaintiff, as the receiver of Rowley's property, equitable interests and things in action; that the judgment in the complaint mentioned is a lien and charge upon said premises; that they be sold at public auction, in the county of Steuben, by the sheriff of the county, he giving public notice of the time and place of the sale, according to law and the practice of the court; that the sheriff execute to the purchaser a deed of the premises sold; that out of the moneys arising from such sale (after deducting the amount of his fees and expenses, and any lien or liens upon the premises for taxes or assessments), the sheriff pay to Harriet A. Lombard the sum of $200, with interest from 26th July, 1858; and to the receiver or his attorney the amount due on the judgment in the complaint mentioned, being the sum of $501.33, with interest thereon from March 18, 1858, together with the sum of $159.92, for the plaintiffs' costs in the action; and, also, the sum of $20, for costs and charges allowed in the proceedings supplementary to execution by the order appointing the plaintiff receiver, and the further sum of $38.52, for the fees, commissions and charges of the said receiver, or so much thereof as the purchase-money of the premises will pay of the same.

Pursuant to this judgment and decree the premises therein mentioned were duly advertised for sale before the commencement of the present action.

On the 1st day of April, 1859 (and while the before mentioned action was pending), Harriet A. Lombard and Charles Lombard, her husband, executed and delivered to

the plaintiff in this action, a deed of conveyance of the said premises in consideration of $700, and the plaintiff paid to her $100 of the purchase-money, and gave to her his bond for the payment of the balance thereof ($600) whenever the said premises should be discharged from all claims and incumbrances against the same to the satisfaction of the attorneys who drew the papers between the parties, or whenever said Patterson should be fully secured and indemnified against all such claims and incumbrances to the satisfaction of said attorneys. At the time the plaintiff made his purchase and took his conveyance he had no actual knowledge of the pendency of the action by the receiver, though he did know of the judgment against Rowley, and that the defendant Brown was claiming to have some lien upon or interest in said premises founded upon the said judgment. Immediately after his purchase, and before he had expended any considerable amount in improvements upon said premises, the defendant Brown went to him, in good faith, for the purpose of giving him notice of his claim ; and upon speaking to him on the subject was informed by him that he knew all about said Brown's claim, and had protected himself against it in his purchase. At the time of the purchase and afterward, when he commenced improving the said premises, he had sufficient notice of the nature and character of the claim of the defendant to put him upon inquiry in regard to the same. The defendants were guilty of no fraud or concealment on the subject of their claim, and did nothing to mislead the plaintiff or induce him to go on with his improvements. Some time after he had commenced making his improvements upon the premises, and while they were in progress, he became aware of the proceedings of the action in which the before mentioned decree was made, and was fully advised of the nature and character of the same several months before the trial of the action in May, 1860. After such knowledge, and before the trial and decree, he continued making improvements, and expended, in that time, an amount on the premises far greater than the whole amount of the defendant's claim. The whole amount ex-

pended by the plaintiff in improvements on the premises, after his purchase, was between $4,000 and $5,000.

In December, 1860, the plaintiff brought the present action, making Brown, the judgment creditor, Phelps, the receiver, and Harriet A. Lombard parties defendants. At this time the premises were being advertised for sale, in pursuance of the decree obtained by the receiver. The complaint alleged the recovery of the judgment by the receiver; the purchase of the premises by the plaintiff, from Harriett A. Lombard, on the 1st April, 1859; that, in January, 1859, the house on the premises was destroyed by fire; that, after the conveyance of the premises to him, he commenced the erection of a dwelling house thereon, and expended on the same the sum of $5,000; that, after the destruction of the dwelling house on the premises, in January, 1859, they were worth only the sum of $700 paid, and secured to be paid therefor by the plaintiff; and have never at any time since been worth any further or greater sum, independent of the improvements put thereon by the plaintiff; that Harriet A. Lombard is insolvent; that, shortly after the entry of the receiver's judgment, in August, 1860, of which a certified copy had been delivered to the sheriff to be executed, the plaintiff, by his attorneys, offered to the sheriff to pay him the sum of $550, as the value of the premises, after deducting the sum to be paid out of the avails thereof to Mrs. Lombard, by the provisions of the decree, together with the sheriff's fees upon the same; that the sheriff communicated the offer to the defendant, Brown, the owner of the judgment, who declared that he would not receive one cent less than the full amount of said judgment, costs and sheriff's fees; that, on the 20th of September, 1860, Mrs. Lombard had, by an instrument in writing, authorized the plaintiff to retain in his hands the sum of $200 and interest, required to be paid to her out of the the proceeds of the premises, and that, shortly afterward, plaintiff offered and tendered to Phelps, the receiver, and to the sheriff, $550 in discharge of the premises from the lien of the decree or judgment, giving them notice at the same time

that he was authorized to retain the said $200 and interest, and likewise offering to pay the fees of the sheriff upon the decree; but Phelps and the sheriff refused to receive the sum so offered and tendered; that the sheriff has advertised the sale of the premises on the 6th December, 1860; that he is informed and believes that the only interest or equity which was the subject of the decree, was the value of said premises before any improvements were made thereon by plaintiff; and that Phelps, as receiver, is not entitled to satis-faction of said decree, out of the enhanced value of the said premises, by reason of the improvements made thereon by plaintiff; but that if the premises should be sold, he would be liable to lose, not only the sum paid for the premises, but the said improvements, amounting to over the sum of $5,000; and that Brown and Phelps threatened and intend to enforce said judgment against the premises to the whole amount; and if they are permitted to enforce the said judgment, the plaintiff will be compelled to pay a large amount over and above the property which came into his hands from Mrs. Lombard, or will lose the whole amount of the improvements made by him on the said premises. Wherefore he prays that he may be permitted to redeem the said premises from the said judgment, upon the payment of the value of the premises, after deducting the amount, which, by the same, is directed to be paid to Mrs. Lombard, and he offers to pay the said sum, and bring the same into court, to the amount of $550. An injunction was also prayed for in the complaint, and temporarily granted, restraining Brown and Phelps from executing the judgment, and from selling the premises.

Upon the facts as found by the judge, and stated above, his conclusions of law were:

1. That the *lis pendens* did not operate as a constructive notice to the plaintiff of the action pending at the time of his purchase, but that he was chargeable with actual notice thereof, at the time of his said purchase, and after-wards, when he commenced his improvements upon said premises.

2. That the improvements made by the plaintiff on said premises are not exempt from the said decree, but are subject to the same.

3. That the defendants are entitled to judgment for their costs in this action, which is hereby ordered, and the injunction order heretofore granted in the action is vacated, and the injuction dissolved.

Judgment being entered in conformity with this decision, the plaintiff appealed to the General Term of the Supreme Court, where the judgment was affirmed. The plaintiff appeals to this court.

*George T. Spencer,* for the appellant.

The court has jurisdiction in equity to grant the relief prayed for.

1. The action is well brought in the nature of a bill of review, on the ground of error in the original suit not apparent on the face of the proceedings. The fact which is not so apparent being the purchase of the property by the plaintiff, and the making of expensive improvements thereon by him.

If the complaint does not *in terms* pray that the former judgment may be reviewed, such is the *substance* of the prayer. But the plaintiff may ask for this relief under the general prayer of the complaint. (2 Barb. Ch. Pr., 90, 94; Adams Eq., 416, 419.)

2. The case is analogous to many others, in which the court will restrain a party from enforcing a legal claim when it would be inequitable to do so; as for instance, when a party ignorantly erected a house upon lands of another who saw the improvement but was ignorant that it was on his own land; and where a contract was made for the sale of land, and the vendee took possession and made valuable improvements but no part of the consideration was paid, and a judgment was obtained against the vendor which became a lien on the land. (*McKelway* v. *Ammon,* 2 Stockton N. J., 115; *Lane* v. *Ludlow,* 2 Paine C. C., 591; *Matter of Howe,*

1 Paige, 125 ; *Arnold* v. *Patrick*, 6 id., 310 ; note to same case, 6 id., 316 ; *Moyer* v. *Hinman*, 3 Kern., 180.)

II. The plaintiff had no notice of the pendency of the action in which the judgment was rendered.

1. There was no notice of *lis pendens* filed in the clerk's office, so as to make the same constructive notice to a purchaser. This is the finding of the court both as matter of fact and of law. (*N. Y. Life Insurance Co.* v. *White*, 17 N. Y., 469 ; *Sawyer* v. *Adams*, 8 Vt., 172 ; *Waring* v. *Waring*, 7 Abb., 472 ; Code, sec. 132.)

2. The plaintiff had no actual notice of the pendency of the action at the time of his purchase. This fact is found by the court.

3. The facts do not justify the conclusion of law by the court, that the plaintiff was chargeable with actual notice of the action pending, at the time of his purchase.

*a.* A party is not chargeable with actual notice, unless he has such notice and the court has found as a fact that the plaintiff had not. (2 Leading Cases in Equity, 99.)

*b.* The facts found by the court do not amount to constructive, much less to actual notice of the pending suit. The only fact found which can be claimed as leading to this conclusion, is the fact that plaintiff knew of the judgment against Rowley and that defendant Brown was claiming some lien or interest in the premises founded on that judgment. It is difficult to see how this knowledge would lead to the fact of a suit to enforce the judgment.

*c.* If the plaintiff was put upon inquiry as to any proceeding upon the judgment against Rowley he made it diligently by inquiring of the party with whom he dealt and making search in the clerk's office. These were proper sources of information, and plaintiff had the right to stop there. (*Williamson* v. *Brown*, 15 N. Y., 354.)

III. If plaintiff had no actual notice of the *lis pendens*, and no notice was properly filed in the action so as to make the same constructive notice to him, he is not bound by the judgment in the action.

1. The only mode of making the pendency of an action *constructive* notice to a purchaser is by filing notice in the clerk's office. The Code is, that from the time of filing *only*, shall the pendency of the action be constructive notice to a purchaser. (Code, sec. 132.)

The Revised Statutes provide that, to make the pendency of an action constructive notice to a purchaser, it shall be the duty of the complainant to file notice of the pendency of such action. (2 R. S., 174, sec. 43.)

If the notice of *lis pendens* be not filed, nothing short of actual express notice will be sufficient to bind him. (*Burroughs* v. *Reiger*, 12 How., 171.) Such is also the English rule. (Adams Eq., 157; 3 Sug. V. & P., 458; 5 Vict. C., 11 s., 7.)

The rule under the recording acts has no application. That act in terms only protects *bona fide* purchasers for a valuable consideration. (Code, sec. 132.)

IV. If plaintiff at the time of his purchase had no notice of the pending action, he is not bound by the judgment, and it is immaterial whether his improvements were made after notice or not. Plaintiff's rights became perfect the moment the purchase was complete, and the unpaid purchase-money only was subject to the judgment. (2 Lead. Cases in Eq., 124; *Parks* v. *Jackson*, 11 Wend., 442; *In matter of Howe*, 1 Paige, 125; *Arnold* v. *Patrick*, 6 id., 310; note to same case, 6 id., 316; *Moyer* v. *Hinman*, 3 Kern., 180.)

V. The facts found on which the judgment was rendered, make Mrs. Lombard, the grantor of the plaintiff, a purchaser in good faith, and protect her title to the extent of the purchase-money paid by her, and the judgment awards her that purchase-money with interest out of the property. Whatever notice, therefore, the plaintiff may have had of the equities of the judgment creditor of Rowley, having himself purchased of a purchaser in good faith, his title is protected. (2 Lead. Cases in Eq., and cases cited 50, 131.)

VI. Had the plaintiff been a party to the original suit, he could only have been chargeable as a trustee, and consequently only accountable for the property which came into

his hands. The value of that property was $700, and consisted only of the land without improvements. (*Boyd* v. *Dunlop*, 1 Johns Ch., 478; Laws of 1858, chap. 314, sec. 2; 1 Am. Lead. Cases, 80.)

VII. The plaintiff in interest in the judgment knew of the purchase by the plaintiff in this action. If the judgment creditor desired to affect the land in plaintiff's hands, having failed to give an effectual notice of *lis pendens*, he should have made him a party to the action. Having failed to do so, the plaintiff now has the same rights and is only subject to the same liabilities as if he had been a party to the original suit, and is entitled to ask for the same relief. As in that case he would only have been chargeable with the property or fund which came into his hands, so now he is entitled to relief upon accounting for that sum. (*McKelway* v. *Ammon*, 2 Stockton N. J., 115; *Lane* v. *Ludlow*, 2 Paine C. C., 591; *Moyer* v. *Hinman*, 3 Kern., 180.)

*Bradley & Kendall*, for the respondent.

1. He has not paid the purchase-money. Giving his bond does not aid him. (*Hardingham* v. *Nichols*, 3 Atk., 304; *Wormley* v. *Wormley*, 8 Wheat., 421; *Doswell* v. *Buchanan*, 3 Leigh., 365; *Jewett* v. *Palmer*, 7 Johns. Ch., 65; *Christie* v. *Bishop*, 1 Barb. Ch., 105; *Jackson* v. *Cardwell*, 1 Cow., 622.)

2. The plaintiff had notice of the claim or incumbrance of the defendants on the premises.

3. At all events, the plaintiff, when he purchased, had sufficient knowledge or information to put him on inquiry in respect to the defendant's claim, and the pendency of the suit to enforce it, which was equivalant to, and rendered him chargeable with notice thereof, and the court properly so found. (*Pitney* v. *Leonard*, 1 Paige, 461; *Peters* v. *Goodrich*, 3 Conn., 146, 150; *Booth* v. *Barnum*, 9 id., 286; *Hawley* v. *Cramer*, 4 Cow., 717; *Jackson* v. *Cadwell*, 1 id., 622; *Tuttle* v. *Jackson*, 6 Wend., 213; see vol. 2, part 1, Leading Cases in Eq.; Hare & Wallace's Notes, page 100 and *seq.*, and cases there cited.)

And the exercise of "common prudence and ordinary diligence" would have fully apprised the plaintiff of the situation of the defendant's claim.

4. At the time of the transaction, of the purchase of which the making the bond was a part, the plaintiff made Spencer & Thomson his attorneys, in respect to the incumbrances, &c., and they acted as such.

That appears by the bond itself.

The fact that his attorneys knew of the pendency of the suit, at the time, was notice to the plaintiff. (*Griffith* v. *Griffith*, 1 Hoff. Ch., 153; same case, 9 Paige Ch., 315; vol. 2, part 1, Leading Cases in Eq., 106.)

And the rule is the same, in respect to the plaintiff, if Spencer & Thomson were appointed by both him and Mrs. Lombard, and in that case any knowledge they had as attorneys for her, operated as notice to the plaintiff. (Leading Cases in Eq., vol. 2, part 1, page 107; *Brotherton* v. *Hatt*, 2 Vern., 574; *Winter* v. *Lord Anson*, 3 Russ., 448, 493; *Hargraves* v. *Rothwell*, 1 Keen, 154.)

5. The burden of proof is on the plaintiff, to show that he was a *bona fide* purchaser, by proving fully a want of any notice, actual or constructive, of payment of the purchase-money, &c., &c. (*Jewett* v. *Palmer*, 7 Johns. Ch., 65; *Murray* v. *Finster*, 2 Johns. Ch., 155; Leading Cases in Eq., vol. 2, part 1, 59 and *seq.*)

WRIGHT, J.    The plaintiff purchased the premises from Mrs. Lombard, who held the legal title by a fraud, pending an action to enforce the claim of the defendant, Brown, a judgment creditor of Rowley, the equitable owner thereof. Rowley was in possession under a contract to purchase, and had paid all the purchase-money but $200, when in June, 1858, with intent to defraud his creditors, and prevent the collection of the Brown judgment, he procured the legal title to be placed in Mrs. Lombard's hands. The consideration for the transfer to the plaintiff, on the 11th April, 1859, and some seven months after the commencement of this action to subject the premises to the payment of Brown's

judgment, was $700, of which amount $100 was paid when he took the conveyance, and the remainder ($600) he obligated himself to pay " whenever the premises should be discharged from all claims and incumbrances to the satisfaction of the attorneys who drew the papers between the parties, or whenever he (Patterson) should be fully secured and indemnified to the satisfaction of such attorneys." These were the plaintiff's attorneys, and at the time the conveyance was made and this extraordinary obligation executed, they were defending the receiver's suit for Mrs. Lombard, his grantor. He had no actual knowledge of the pendency of the action by the receiver at the time of the execution of the papers. He did know, however, of the judgment against Rowley, and that the defendant Brown was claiming to have a lien upon or interest in, the premises founded upon such judgment, and he had sufficient notice of the nature and character of the claim to put him upon inquiry in regard to it. Intermediate the commencement of the receiver's suit and the purchase by the plaintiff, the dwelling house on the premises had been destroyed by fire, and it is averred in the complaint but denied in the answer, and there is no finding on the subject, that at the time of the purchase, the premises were worth but the sum of $700 (the price agreed to be paid therefor), and was never at any time afterward, worth any further or greater sum, independent of the improvements put thereon by the plaintiff. Immediately after his purchase the plaintiff commenced improving the premises, but before he had expended any considerable amount in that way, the defendant Brown went to him, in good faith, for the purpose of giving him notice of his claim, and upon speaking to him upon the subject, was informed by him that he knew all about the claim, and had protected himself against it in his purchase. He continued improving the premises, although the defendants were guilty of no fraud or concealment on the subject of their claim and did nothing to mislead or induce him to go on with his improvements. Whilst the improvements were in progress, and several months before the trial of the receiver's action, he became aware of

the proceedings in the action, and was fully advised of the nature and character of the same; yet after such knowledge, and before the trial and decree, he continued making them, and expended in that time an amount on the premises far greater than the whole amount of the defendant's claim.

In May, 1860, the receiver obtained judgment, declaring that the transfer of the premises from Rowley to Mrs. Lombard was fraudulent and void, as against the defendant Brown, the judgment creditor; that Mrs. Lombard and her assigns held the premises in trust for the benefit of the plaintiff, as receiver of the debts, property, equitable interests and things in action of Rowley, and that the judgment of the defendant Brown, against Rowley for $529.06, recovered in December, 1857, is a lien and charge upon the premises. The premises were ordered to be sold, and the proceeds (after payment of the fees and expenses of the sale), to be applied as follows: $200, with interest, from 24th July, 1858, to Mrs. Lombard, that being the amount of the purchase-money of the premises remaining unpaid by Rowley at the time of the transfer to her. 2d. To the payment to the plaintiff (the receiver), or his attorney, the amount due on the Brown judgment, being $501.53, with interest, from March, 1858. 3d. To the payment of the plaintiff's costs in the action, adjusted at $159.92, also the sum of $25 for the costs and charges in the proceeding, supplementary to execution, and $38.52 for the fees, commissions and charges of the receiver, or so much as the purchase-money of the premises will pay of the same.

After this decree had been perfected, and the premises, in pursuance thereof, advertised for sale, and recognizing its legality and force as against him, the plaintiff comes into a court of equity, and asks that the premises be discharged from the lien and operation of such decree, upon his payment of the amount of the unpaid purchase-money, which he agreed to pay to Mrs. Lombard, less the sum of $200, awarded to her out of the proceeds of the premises. Conceding that the premises, at the time of his purchase from Mrs. Lombard, were worth no more than the price which he

agreed to pay therefor (which fact is not found), the relief asked, in substance, is that the meliorations and improvements of the plaintiff to the premises, after he acquired the legal title, be protected from the operation of the decree. Coming in subordinately to such decree, which gave the defendants the right to sell the premises to make the amount of their claim, unless the same should be paid, instead of making such payment, which the plaintiff was at liberty to do, and relieve the premises from that charge, under pretense of protection to his improvements, made at his peril, it is sought to compel the defendants to take a specific sum less than their claim, and deprive them of the full benefit of their decree. I am at a loss to conceive of any ground on which a court of equity should interpose and grant the relief prayed for.

The judgment of the court, charged the premises with the payment of Brown's judgment and the receiver's costs, amounting in the whole to over eight hundred dollars, The proposition is, that the premises be discharged by paying $550 of this amount, leaving the judgment creditor deficient the balance, and this upon the pretext that the premises are worth no greater sum, after deducting the $200 to be paid to Mrs. Lombard, independent of the improvements made thereon. Chargeable with notice of the pendency and object of the action in which the judgment was recovered, the plaintiff purchased the premises for the nominal sum of $700, although, in fact, paying but $100, nor agreeing to pay any more until they were discharged from all claims and incumbrances to the satisfaction of his attorney, who was then defending the receiver's action for his grantor. No one can wink so hard as not to see that it was the defendant's claim, that he was then prosecuting, that was in the contemplation of the parties by this arrangement. Stopping here, the plaintiff could not be regarded as a *bona fide* purchaser for a valuable consideration, and entitled, as such, to be protected by a court of equity. Had he stopped at this point, the theory on which this action is claimed to be maintainable, viz., that he is bound to no greater extent than the purchase-money

unpaid by him to his grantor, or the value of the premises
without his improvements — would have no basis.  Nor would
he have lost anything, except the $100, by making the
defendant's judgment a lien and charge on the premises.  He
did not, however, stop upon taking his conveyance.  Enter-
ing immediately into possession he began improving the
premises.  Then the defendant Brown went to him in good
faith to notify him of his claim, when he assured him that
he knew all about it, and had protected himself against it in
his purchase.  From this time surely he acted with his
eyes open.  Still he went on with his improvements, con-
tinuing or permitting to continue the litigation in respect to
the claim of Brown, until the accumulation of costs increased
the sum to which the defendant was entitled beyond the
amount of purchase-money withheld by him, and which was
sufficient at the time of his purchase to have fully discharged
such claim.  In view of these facts, what equitable right has
the plaintiff to have the premises in question discharged
from the lien of the judgment by paying a portion thereof,
or an amount equivalent to the purchase-money unpaid by
him, or even the value of the premises at the time of his pur-
chase, and before they were improved?  None whatever.  If
he is compelled now, for the purpose of discharging the
premises from the lien of the defendant's judgment, to pay
more than they were really worth at the time of his purchase,
he voluntarily and knowingly placed himself in the position,
and their enhanced value comes from his own improvidence
and folly.  A party having notice of the pendency of an
action to reach the equitable interest of a judgment debtor
in lands, may not purchase them from a person fraudulently
holding the legal title, enter upon and improve them, and
when the lands are subjected to the claim of the judgment
debtor, and his judgment and the costs of the action specific-
ally charged upon them, discharge the lien by payment of a
sum of money equal to the price that he agreed to give his
grantor, or discharge it by the payment of a sum equal to
the value of the lands, without the improvements that he,

not innocently or ignorantly, but improvidently and at his peril, put upon them.

This is the exact position the plaintiff occupies. He was a volunteer throughout. He knew, or was chargeable with notice of the pendency of the action when he purchased, and if not then, most certainly before he had done anything to increase the value of the estate. Courts of equity have never gone the length, even in favor of a *bona fide* possessor of land, whose title is defective, of decreeing compensation for the improvements made by him upon the land in good faith against the true owner, who asserts his title to it. But here, in a direct suit, the *mala fide* purchaser of land in possession, in effect, asks to be recompensed for improvements which have enhanced the value of the estate, made by him in bad faith, and in defiance of, and regardless of the defendant's rights. I say this is essentially the relief prayed for. In asking to redeem the premises and discharge them from the lien and operation of the defendant's judgment, by paying the value of them at the time of his purchase, the prayer in effect is, to have his improvements exempted; and the judge, at Special Term, was right in the conclusion that it was simply a question of the right to compensation for improvements upon lands to which another has a superior claim, differing only in point of form.

I am clearly of the opinion that the case was properly disposed of in the court below. Barring the question of jurisdiction of a court of equity in the premises, the case was not one equitably entitling the plaintiff to redress. No injury will happen to him by enforcing the defendant's judgment, that he did not voluntarily bring upon himself. With full knowledge of the defendant's rights and in disregard of them, he went on expending his money in the improvement of premises, at length charged with the payment of the defendant's judgment. Courts of equity do not relieve a party from the consequences of risks that he thus voluntarily assumes.

The judgment of the Supreme Court should be affirmed.

Judgment affirmed.